Filed 10/17/25  P. v. Sanders CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>LOUIS SANDERS,<br><br>        Defendant and Appellant. | A171868<br><br>(Alameda County<br>Super. Ct. No. 159734B) |

A jury found Louis Sanders guilty of two counts of first degree murder: one for personally killing Jabari Harris and one for aiding and abetting his co-defendant's ensuing killing of Harris's associate, Luis Coria.  Sanders was sentenced to life in prison without the possibility of parole.  Later, Sanders petitioned for resentencing under Penal Code section 1172.6,[1] claiming he could not be found liable for murder under current law.  The trial court denied his petition, finding him ineligible for relief as a matter of law based

---

[1] Undesignated statutory references are to the Penal Code.  Effective June 30, 2022, the Legislature renumbered former section 1170.95 as section 1172.6 without substantive change.  (Stats. 2022, ch. 58, § 10; *People v. Emanuel* (2025) 17 Cal.5th 867, 880, fn. 4.)  Although Sanders filed his petition under former section 1170.95, the trial court ruled on it in 2024, applying the current section 1172.6.  We refer to the current section throughout this opinion.

on the record of his conviction. Sanders appealed as to his conviction for aiding and abetting Coria's murder. We affirm.

## I. BACKGROUND

### A. *Murders and Convictions*

Sanders and his co-defendant Marrin Hughes were "longtime acquaintances and, perhaps, cousins."[2] In 2007, they began selling drugs in an area claimed by Harris and his associates. Harris verbally confronted both Sanders and Hughes about this in the month before the killings.

13-year-old S.C. lived in his mother's second-floor apartment near the scene of the murders. He knew Harris, Sanders, and Hughes and was aware of their conflict. On the day of the killings, S.C. came home from school and spoke to Sanders and two others across the street from his apartment. Sanders retrieved a gun, and when one of the others asked if he would sell it, Sanders declined, saying he "needed it." Later that afternoon, Sanders walked into S.C.'s mother's apartment, "told everybody to stay in the house," pulled the gun from his waistband, and left.

S.C. went onto a balcony and saw Sanders and Harris arguing outside, on the sidewalk just beyond the gate to a fence in front of the apartment. Coria was nearby, also on the sidewalk. Harris answered his cell phone and turned away from Sanders. Sanders pulled out his gun, shot Harris, and rummaged through his pockets after he fell to the ground. At the same time, Hughes approached Coria from the side of the apartment building, inside the

---

[2] Our recitation of the underlying facts is based on our opinion in a prior appeal, in which we affirmed Sanders's and Hughes's convictions. (*People v. Hughes* (Mar. 13, 2013, A131963) [nonpub. opn.].) However, in resolving this appeal, we rely on our independent review of the record of conviction, not the factual background in our prior opinion. (See *People v. Williams* (2022) 86 Cal.App.5th 1244, 1247, fn. 3.)

fence, with a gun in his hand. Coria started to run away and Hughes shot him twice in the back, moved closer and fired more shots, then ran off.

Sanders and Hughes were jointly charged with the murders of Harris and Coria and were tried together in 2011. The jury was instructed on only one theory of first degree murder: the murders were willful, deliberate and premeditated. It was also instructed on direct aiding and abetting. The jury was not instructed on felony murder, lying-in-wait murder, or the natural and probable consequences doctrine.

The jury found Sanders and Hughes guilty of the first degree murders of Harris and Coria.[3] Sanders was sentenced to two terms of life imprisonment without the possibility of parole, plus two years for an additional conviction for possession of a firearm by a felon, to run concurrently.

## B.   *Petition for Resentencing*

Sanders filed a petition for resentencing under section 1172.6 and the trial court appointed counsel to represent him. The parties submitted briefing and, after a hearing, the court found Sanders failed to make a prima facie showing and denied his petition. The court relied on "the totality of the record of conviction based upon the jury's verdicts . . . and the findings as to the firearms and armed and 12022.5(d), intent to kill finding and the aiding and abetting instruction." (*Sic.*)[4]

---

[3] On our own motion, we take judicial notice of the verdicts against Hughes, which are included in the record in A131963. (Evid. Code, §§ 452, subd. (d), 459.)

[4] The trial court also denied Hughes's petition under section 1172.6, and we affirmed after Hughes appealed from that ruling. (*People v. Hughes* (Mar. 12, 2021, A160287) [nonpub. opn.].)

## II.  DISCUSSION

### A.    *Legal Background*

#### 1.      Senate Bill 1437

" '[T]o more equitably sentence offenders in accordance with their involvement in homicides' " and their " 'own level of individual culpability,' " Senate Bill No. 1437 (2017–2018 Reg. Sess.) "narrowed the application of the felony-murder rule" by amending section 189 and "imposed a new requirement that, except in cases of felony murder, 'a principal in a crime shall act with malice aforethought' to be convicted of murder.  (§ 188, subd. (a)(3).)" (*People v. Curiel* (2023) 15 Cal.5th 433, 448–449 (*Curiel*).) Now, "[m]alice shall not be imputed to a person based solely on his or her participation in a crime."  (§ 188, subd. (a)(3).)

"Senate Bill 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief," codified in section 1172.6.  (*People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*).)  A petitioner may seek to have an eligible "conviction vacated and to be resentenced on any remaining counts." (§ 1172.6, subd. (a).)  The process "begins with a facially valid petition that entitles petitioner to counsel, continues with asking whether petitioner has made a prima facie case for relief, and, if so, proceeds to an evidentiary hearing on the ultimate question of whether petitioner should be resentenced." (*People v. Patton* (2025) 17 Cal.5th 549, 562 (*Patton*).)  If a petitioner "fails, at the second step, to make a prima facie showing, then the court denies the petition and provides no relief." (*Ibid.*; § 1172.6, subd. (c).)

#### 2.      Governing Legal Principles

As relevant here, a petitioner is eligible to seek resentencing "when all of the following conditions apply:" (1) a charging document "allowed the

prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime," (2) the defendant was convicted of murder after trial, and (3) the defendant "could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).)

The prima facie analysis turns on an examination of the governing law at the time of trial and the record of conviction. (*People v. Antonelli* (2025) 17 Cal.5th 719, 731 (*Antonelli*).) That record "includes documents from the petitioner's jury trial like the jury instructions and verdict forms" (*People v. Gallardo* (2024) 105 Cal.App.5th 296, 301), as well as "the factual findings" the verdicts "necessarily reflect" (*Curiel, supra,* 15 Cal.5th at p. 465).

"In reviewing any part of the record of conviction at this preliminary juncture," a court "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*People v. Lewis* (2021) 11 Cal.5th 952, 972.) A petition fails at the prima facie stage where "the record of conviction 'establish[es] conclusively that the defendant is ineligible for relief.'" (*Curiel, supra*, 15 Cal.5th at p. 470, quoting *Strong, supra*, 13 Cal.5th at p. 708.) "[M]ere latent, speculative possibilities . . . conjured from thin air or a legal conclusion" do not create "[a] dispute regarding the basis of a conviction" that warrants a hearing. (*Patton, supra,* 17 Cal.5th at p. 567.) For "individuals convicted following jury trials, the jury instructions will be critical." (*Antonelli, supra*, 17 Cal.5th at p. 731.) If the "jury instructions foreclose th[e] possibility" that the petitioner is entitled to relief "*as a matter of law*," a prima facie case is not established. (*Curiel, supra,* 15 Cal.5th at p. 470, italics original.)

"We 'review de novo whether the trial court conducted a proper [prima facie] inquiry under section 1172.6, subdivision (c).' " (*People v. Miller* (2025) 112 Cal.App.5th 508, 515.)

**B.     Analysis**

Sanders argues that, even though the jury was not instructed on felony murder or the natural and probable consequences doctrine, he may have been convicted on a theory under which malice was imputed to him based on his participation in a crime. He points to "the combination of the aiding and abetting, premeditated murder, and special circumstances instructions," and seems to claim the instructions allowed the jury to convict him of Coria's murder without finding he acted deliberately and with premeditation, and thereby to impute his co-defendant's malice to him. As we will explain, this argument conflates distinct concepts, and it fails because the jury necessarily found Sanders acted with malice.

**1.     Jury Instructions**

After receiving evidence at trial, the jury was instructed on both direct liability and aiding and abetting liability for murder. (CALCRIM No. 400.) It was instructed that to prove a defendant guilty based on aiding and abetting, the People must prove: "1. The perpetrator committed the crime;" "2. The defendant knew that the perpetrator intended to commit the crime;" "3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime;" and "4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime." (CALCRIM No. 401.) The instruction explained that an aider and abettor "knows of the perpetrator's unlawful purpose and . . . specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime." (*Ibid.*)

6

The jury was instructed on first or second degree murder with malice aforethought, including instruction on express and implied malice. (CALCRIM No. 520.) It was then instructed that a conviction for first degree murder requires proof "that the defendant acted willfully, deliberately, and with premeditation. For the purposes of this case, all other murders are of the second degree." (CALCRIM No. 521.) That instruction continued: "A defendant acted willfully if he intended to kill. A defendant acted deliberately if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant acted with premeditation if he decided to kill before completing the act that caused death." (*Ibid.*)

## 2. The Jury Found Sanders Acted with Malice

As we have explained, the jury found Hughes, the perpetrator of Coria's murder, guilty of premeditated and deliberate first degree murder. Given that verdict, the jury found under CALCRIM No. 401 that Sanders knew Hughes intended to kill and that Sanders intended to aid and abet Hughes in doing so. In other words, the jury found Sanders acted with malice. (See *People v. McCoy* (2001) 25 Cal.4th 1111, 1123 ["[a]bsent some circumstance negating malice one cannot knowingly and intentionally help another commit an unlawful killing without acting with malice"]; *People v. Moon* (2005) 37 Cal.4th 1, 29 ["intent to kill is the ' "functional equivalent" ' of *express* malice"]; cf. *Curiel*, *supra,* 15 Cal.5th at p. 441 [record of conviction did not show the jury necessarily found "the mens rea required of a direct aider and abettor," including "knowledge of the perpetrator's intent to commit an unlawful act constituting the offense and the intent to aid the perpetrator in its commission"].) Because the jury found Sanders personally harbored the mental state required for murder, he is ineligible for resentencing as a matter

of law.  (See *People v. Estrada* (2022) 77 Cal.App.5th 941, 947 [instructions including CALCRIM No. 401 "required the jury to find that [defendant] acted with intent to kill in order to find him guilty of first degree murder, even under an aider and abettor theory"]; *People v. Coley* (2022) 77 Cal.App.5th 539, 547 (*Coley*) ["intent to kill is the equivalent of express malice, at least when there is no question of justification or excuse, and by finding appellant guilty of attempted murder, the jury necessarily found he had personally harbored intent to kill or express malice when he aided and abetted the second degree murder."].)

Sanders argues that in this case, "the 'before or during' the 'commission of the crime' language in CALCRIM No. 401" raises the possibility that the jury found he "became aware of his confederate's intent to kill 'during' the time that the second victim was shot," and formed an intent that Hughes kill Coria "concomitant with the shooting." According to Sanders, the jury then could have "superimposed" Hughes's "premeditation and malice" on him. But premeditation and malice are distinct concepts. (*People v. Nieto Benitez* (1992) 4 Cal.4th 91, 103 ["the mental state comprising malice is independent of that encompassed within the concepts of willfulness, deliberation, and premeditation"].) Even if the jury theoretically could have made the " 'virtually impossible' " choice to convict Sanders of first degree murder without finding he engaged in premeditation and deliberation, *People v. Hin* (2025) 17 Cal.5th 401, 493, it absolutely could not have convicted Sanders of directly aiding and abetting premeditated first degree murder without finding that he acted with *malice*.[5]

---

[5] In light of this conclusion, we do not reach the People's alternative argument that we should affirm on the ground that Sanders's theory does not rest on changes enacted by Senate Bill No. 1437.  (See *People v. Burns* (2023) 95 Cal.App.5th 862, 868–869; *People v. Flores* (2023) 96 Cal.App.5th 1164,

Sanders's theory amounts to a claim that the jury could have found him guilty of first degree murder by imputing Hughes's premeditation and deliberation, when he was only guilty of second degree murder because he impulsively decided to aid and abet Hughes during the shooting. But Sanders does not argue that section 1172.6 authorizes a trial court to reduce the degree of a murder conviction, and courts have rejected that idea. (See *People v. Gonzalez* (2023) 87 Cal.App.5th 869, 880–881; *People v. Didyavong* (2023) 90 Cal.App.5th 85, 96–97.) Significantly, he also does not explain how the jury could have imputed *malice* to him on this record of conviction, and that is how the statute delimits resentencing relief.

Finally, it is true that, in other circumstances, courts have found the instructions Sanders raises may allow the imputation of malice. (See *People v. Langi* (2022) 73 Cal.App.5th 972, 982–984 [second degree implied malice murder]; *People v. Maldonado* (2023) 87 Cal.App.5th 1257, 1262 [lying-in-wait murder].) But the ambiguity in these cases arose because the perpetrator did not necessarily aim to kill. (*Langi*, at pp. 982–984; *Maldonado* at p. 1266; see *Coley, supra*, 77 Cal.App.5th at p. 547 [noting that *Langi* is limited to implied malice murders].) That is not possible here. In convicting Sanders of first degree murder, the jury necessarily found Hughes intended to kill Coria—and Sanders intended the same.

## III. DISPOSITION

The order denying Sanders's petition for resentencing is affirmed.

---

1173 & fn. 4; *People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 935–937.) We similarly need not address the parties' arguments about the impact of the jury's enhancement and special circumstance findings.

_____

Smiley, J.


WE CONCUR:


_____

Humes, P.J.


_____

Banke, J.


*People v Sanders*  A171868

10